# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SCHILD, | ) | CASE NO. 1:16-cv-2926 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Christopher Schild (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED

## I.   Procedural History

On March 11, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of March 14, 2012. (Transcript ("Tr.") 369). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 323-340). Plaintiff participated in the hearing on January 11, 2016, was represented by counsel, and testified. (Tr. 196-241). A vocational expert ("VE") also participated and testified. *Id*. On March 9, 2016, the ALJ found Plaintiff not disabled. (Tr. 114). On October 20, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr.1-4). On December 6, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & R. 13).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to accord appropriate weight to the opinion of a treating physician; (2) the residual functional capacity (RFC) determination was not supported by substantial evidence; and (3) new, material evidence requires a remand for further consideration. (R. 11).

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in November of 1966 and was 45-years-old on the alleged disability onset date. (Tr. 369). He had a high school education and was able to communicate in English. (Tr. 112). He had past relevant work as a pharmacy clerk and assistant manager. *Id*.

**B. Relevant Medical Evidence**[1]

**1. Treatment Records**

At the hearing held on January 11, 2016, Plaintiff testified that he was unable to work due to constant pain in his lower back that radiates down his left leg to his foot. (Tr. 208). The pain persists despite medication, and side effects include weakness, fatigue, light-headedness, and nausea.[2] (Tr. 208-209).

Between July of 2012 and December of 2012, Plaintiff underwent numerous radiofrequency ablations and received Xylocaine injections for chronic neck, back, and shoulder pain. (Tr. 498-516).

On August 20, 2013, he underwent cheilectomy of a painful osteophyte at the 1st metatarsaphalangeal joint area of the right foot. (Tr.779).

In June and July of 2014, Plaintiff received three epidural lidocaine injections at the Cleveland Pain Management Center. (Tr. 908-909, 986-987, 1182-1183).

On October 9, 2015, another MRI of Plaintiff's lumbar spine was performed. (Tr.1382). The MRI showed small disc protrusion at L5-S1 on the left slightly displacing the nerve root at S1; post-operative findings at L4-L5 on the left, with resection of articular facets, as well as a small amount of enhancing epidural fibrosis to the left of midline at L4-L5; small disc protrusion

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record directly germane to Plaintiff's assignments of error, which focus primarily on the opinions rendered by several medical sources concerning Plaintiff's functional abilities. It also does not set forth in any detail the post-hearing evidence, which is discussed to the extent relevant in connection with Plaintiff's third assignment of error.

[2] Because Plaintiff's assignments of error do not challenge the ALJ's credibility determination as it relates to Plaintiff's testimony or the accuracy of the VE's testimony, the court foregoes further discussion of the hearing testimony.

extending into the left L4 nerve root foramen displacing the nerve root slightly and displacing the small amount of epidural fibrosis slightly; and, left L4 neural foramen was capacious, in part due to resection of L4-L5 facets. (Tr. 1383).

On November 13, 2015, a neurosurgeon, Gale Hazen, M.D., after reviewing the findings of multiple MRIs and x-rays, many of which he did not have direct access to, examined Plaintiff. (Tr. 1141-1142). On physical examination, Dr. Hazen noted that Plaintiff gets up, walks, and moves very slowly and cautiously; can support his weight on his toes and heels; has intact sensation; has "very mild give-way strength for left foot dorsiflexion," intact range of motion of the knees and hips; and, extension of the back caused severe pain in the back radiating into the left buttock. *Id.*

On November 30, 2015, Plaintiff underwent right wrist carpal tunnel release surgery performed by Dr. Hazen. (Tr.1407).

After the hearing and a few days prior to the ALJ's decision, Plaintiff underwent left wrist carpal tunnel release surgery on March 2, 2016. (Tr. 194). On May 11, 2016, Plaintiff underwent back surgery, specifically a microdissection, discectomy at Left L5-S1. (Tr. 143).

### 2. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On May 8, 2014, Plaintiff was seen by Ronald G. Smith, Ph. D., for a consultative evaluation in connection with his disability claim. (Tr. 836-842). Dr. Smith noted that Plaintiff "never had any psychiatric treatment or counseling and has not been hospitalized for psychiatric reasons except for going to the ER for anxiety attacks. He's never made a suicide attempt." (Tr. 838). Plaintiff did indicate, however, that he had been taking Zoloft for 10 or 12 years. *Id.* Plaintiff was cooperative; his speech was direct, slow, and deliberate; his thinking well-organized; he showed appropriate affective expression; he was alert and oriented; and his insight

and judgment appeared to be fairly good. (Tr. 840). Dr. Smith's suggested diagnosis was adjustment disorder with mixed anxiety and depression, and generalized anxiety disorder. (Tr. 841). Dr. Smith opined that Plaintiff was capable of understanding, remembering, and carrying out job instructions, limited to some extent by chronic feelings of anxiety. *Id*. In addition, Plaintiff "should be able to maintain adequate attention and concentration but his ability to maintain persistence in the performance of simple or more difficult tasks will be disrupted at times due to his tendency to overreact to stresses." *Id*. He "may have some difficulty dealing appropriately with supervisors and co-workers. *Id*. Finally, Dr. Smith averred that Plaintiff "will have difficulty dealing appropriately with interpersonal work pressures that arise in a job situation." (Tr. 842).

On May 19, 2014, State Agency psychologist Carl Tischler, Ph.D., opined that Plaintiff was markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 296). Dr. Smith opined that Plaintiff "[w]ould do best working alone with occasional/intermittent interaction with coworkers and supervisors." *Id*.

On February 15, 2016, Nicholas Ksenich, M.D., completed a checklist medical source statement containing an assessment of Plaintiff's ability to perform physical work-related activities. (Tr. 1428-1429). Therein, Dr. Ksenich opined that Plaintiff could lift/carry ten pounds occasionally and five pounds frequently; sit for a total of one hour in an 8-hour workday in 30 minute increments; stand/walk for 1 hour each in 15 minute increments; occasionally balance but rarely kneel, crouch, stoop, or crawl; and, occasionally reach and perform fine manipulation but only rarely push/pull or perform gross manipulation. *Id*. In addition, Dr. Ksenich opined the

following environmental restrictions affect Plaintiff's impairment: heights, moving machinery, and temperature extremes. (Tr. 1429). Dr. Ksenich's entire explanation for all of these above assessed limitations consisted of the following notation: "Due to musculoskeletal condition, unable to lift more due to pain + weakness."[3]  (Tr. 1428). Dr. Ksenich indicated that Plaintiff had been prescribed a cane, a brace, a TENS unit, and medications, but not a walker or wheelchair. (Tr. 1429). He also opined Plaintiff needed a sit/stand option, and that Plaintiff experienced severe pain that interferes with concentration, causes Plaintiff to be off task, and causes absenteeism. *Id*. He opined Plaintiff needed to elevate his legs 90 degrees at will and needed approximately four additional, unscheduled breaks daily. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the

---

[3]  At the end of the checklist questionnaire, Dr. Ksenich noted that due to Plaintiff's "condition," he is unable to accomplish "normal work tasks." (Tr. 1429).

claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 14, 2012 through his date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: small disc protrusion at L5-Sl, slightly contacting/displacing the left Sl nerve root; stable, diffuse cervical spondylosis with cord compression at C3-4 and C4-5; depression, obesity, bilateral carpel tunnel syndrome with arterial compression with thoracic outlet maneuvers in the right arm, and mild hallux metatarsophalangeal and interphalangeal degenerative changes (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could occasionally reach overhead bilaterally. He could frequently reach in all other directions bilaterally. He could handle and finger frequently bilaterally. He could occasionally climb ramps and stairs. He could never climb ladders, ropes and scaffolds. He could occasionally balance, stoop, kneel, crouch and crawl. He could never be exposed to unprotected heights, moving mechanical parts or operating a motor vehicle. He was limited to simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). He was limited to simple work-related decisions in using his judgement. He could interact with supervisors and coworkers frequently, but occasionally with the public. He was limited to simple work-related decisions with changes in the work setting. He requires a cane to ambulate.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on November **, 1966 and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from March 14, 2012, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 101-114).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1. Treating Physician Rule

In the first assignment of error, Plaintiff asserts that the ALJ failed to accord appropriate weight to the February 15, 2016 medical source statement submitted by Plaintiff after the

hearing. (R. 11, PageID# 1500-1504). The medical source statement was signed by Nicholas

Ksenich, M.D.[4] (Tr. 1428-1429). The Commissioner does not dispute that Dr. Ksenich was a

treating source as defined in the regulations (R. 13, PageID# 1527), and the record contains

treatment notes from Dr. Ksenich as early as 2007. (Tr. 477). Conversely, the Commissioner

avers that the ALJ satisfied the procedural safeguards of the treating physician rule, and gave

good reasons for discounting Dr. Ksenich's opinion. (R. 13, PageID# 1527-1530).

"Provided that they are based on sufficient medical data, 'the medical opinions and

diagnoses of treating physicians are generally accorded substantial deference, and if the opinions

are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

(6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words,

"[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion

'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc.

Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion

controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting*

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration

---

4 To the extent Plaintiff asserts reversible error based on the simple fact that the ALJ did not
specifically designate whether he was affording Dr. Ksenich's opinion "great weight,"
"significant weight," "some weight," "little weight" or "no weight," he cites no legal authority
suggesting a remand is necessary. These phrases, which the court has encountered frequently, are
not defined in the regulations. It is clear, however, that the ALJ did not afford the opinion
controlling weight (Tr. 111), and, reading the decision in its entirety, the ALJ implicitly rejected
those portions of Dr. Ksenich's opinion that were not incorporated into the RFC determination.

requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on

the patient's complaints).

After reciting the contents of Dr. Ksenich's opinion from February 2016, set forth in detail above, the ALJ addressed the opinion as follows:

> Pursuant to 20 C.F.R. § 404.1527/416.927, if a treating source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, we will accord the opinion controlling weight. In this case, upon consideration of the evidence, the undersigned finds Dr. Ksenich's opinion is unsupported and inconsistent with the record as a whole. Specifically, Dr. Ksenich's opinion appears to be based upon the claimant's subjective complaints. This opinion is not consistent with Dr. Ksenich's own examination findings. On exam, Dr. Ksenich noted that the claimant was well appearing and in no distress (Ex. B24F/4). He was neurologically intact without deficits, and had normal reflexes. He had full range of motion without clubbing, cyanosis or edema. Therefore, the undersigned was persuaded by treatment records and diagnostic results that the claimant had the residual functional capacity to the extent described in the findings above. An MRI of the lumbar spine dated October 9, 2015 showed a small disc protrusion at L5-Sl on the left contact and displacing the left S1 nerve root slightly (Ex. B27F/5). There is a small disc protrusion extending in to the L4 nerve root foramen and displacing the nerve root slightly and displacing the epidural fibrosis slightly. The claimant underwent dectromyogram testing on October 30, 2014 which showed bilateral median neuropathy at or distal to the writs, consistent with a clinical diagnosis of carpal tunnel syndrome, moderate in degree bilaterally, but worse on the left than the right (Ex. B18F/44). Therefore, these test results suggest the limitations set forth in the residual functional capacity findings.

(Tr. 111).

Although Plaintiff contends the ALJ did not apply the factors set forth in the regulations, "supportability" is one of the factors specifically set forth in the regulations used to evaluate opinion evidence and the ALJ found the opinion unsupported. (Tr. 18). The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion" 20 C.F.R. § 404.1527(c)(3). Moreover, numerous decisions have found that the use of checklist or

check-the-box forms that contain little to no accompanying explanation for the assessed

limitations, such as the one provided herein by Dr. Ksenich (Tr. 1428-1429), are unsupported

and, therefore, the ALJ may properly reject treating source opinions contained in such forms.[5]

Furthermore, while the ALJ did not cite the check-box format and lack of explanation in

Dr. Ksenich's opinion as a basis for rejecting portions thereof, recent decisions from the Sixth

Circuit Court of Appeals suggest that the checkbox format of a treating source's opinion is

relevant even where the ALJ did not specifically call attention to it in his or her decision. In

*Ellars v. Commissioner of Social Security*, the Sixth Circuit agreed with "the district court that

the [ALJ] gave 'good reasons' for not affording Dr. Schall's opinion controlling weight." 647

Fed. App'x 563, 568 (6th Cir. 2016). The *Ellars* court explained as follows:

> Dr. Schall's evaluation consisted of a two-page form on which he entered check
> marks in the blanks regarding plaintiff's physical limitations…. Many courts have
> cast doubt on the usefulness of these forms and agree that administrative law
> judges may properly give little weight to a treating physician's "check-off form"
> of functional limitations that "did not cite clinical test results, observations, or
> other objective findings…." …. These cases recognize that the administrative law

---

[5] *See, e.g., Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 636 Fed. App'x 625, 2016 WL 124140
at *4 (6th Cir. Jan. 12, 2016) ("Dr. Chapman's checklist opinion did not provide an explanation
for his findings; therefore, the ALJ properly discounted it on these grounds."); *accord Langlois
v. Colvin*, No. 3:15-CV-01682, 2016 WL 1752853 at *8 (N.D. Ohio May 3, 2016) (Vecchiarelli,
M.J.) (finding the ALJ did not err by rejecting a treating source's unexplained checklist opinion);
*see also Hyson v. Comm'r of Soc. Sec.*, No. 5:12CV1831, 2013 WL 2456378, at *14 (N.D. Ohio
June 5, 2013) (Burke, M.J.) (finding that because Dr. Martinez merely checked the boxes on the
form while leaving those sections of the form blank where she was to provide her written
explanation, she failed to provide any substantive basis for her conclusions and the ALJ was not
required to accept her opinions); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)
("We have held that the ALJ may 'permissibly reject[] ... check-off reports that [do] not contain
any explanation of the bases of their conclusions.'") (citations omitted); *Smith v. Astrue*, 359
Fed. App'x 313, 316 (3d Cir. 2009) ("checklist forms ... which require only that the completing
physician 'check a box or fill in a blank,' rather than provide a substantive basis for the
conclusions stated, are considered 'weak evidence at best' in the context of a disability
analysis.") (citations omitted); *cf. Price v. Comm'r SSA*, 342 Fed. App'x 172, 176 (6th Cir. 2009)
("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion
regarding [claimant's] impairments, the ALJ did not err in discounting his opinion.")

> judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence. In the "REMARKS" section of the Physical Capacity Evaluation, Dr. Schall simply noted plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety. These remarks were not sufficient to explain Dr. Schall's findings.

*Id*. at 566-567 (internal citations omitted). In *Ellars*—as in the case at bar—the ALJ's analysis of the treating source's opinion did not actually identify the checkbox format of the opinion in question as a reason for discounting it. *Ellars v. Comm'r of Soc. Sec.*, No. 2:14cv2050, 2015 WL 3537442 at *3 (S.D. Ohio Jun. 4, 2015) (the ALJ only observed that the medical opinion was "conclusory," and provided "very little explanation"), *report and recommendation adopted sub nom. Ellars v. Colvin*, 2015 WL 4538392 (S.D. Ohio Jul. 27, 2015).[6] Nevertheless, the Sixth Circuit affirmed the district court, which in turn affirmed the ALJ's decision to reject a treating source's opinion. Although the ALJ did not cite the unsupported checkbox format as a basis for rejecting the opinion, the district court's decision was rooted primarily in the deficient checkbox format of the disputed opinion.

Another Sixth Circuit decision went even further and determined that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)).[7] The *Hernandez* decision explained that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by

---

[6] The ALJ's discussion of Dr. Schall's opinion was quoted in the magistrate judge's report and recommendation. 2015 WL 3537442 at *3.

[7] The *Friend* decision identified three instances where a violation of the treating physician rule would be harmless error. 375 Fed. App'x at 551. The first instance, found applicable by the *Hernandez* court, was where "a treating source's opinion is so *patently deficient* that the Commissioner could not possibly credit it." *Id*. (emphasis added).

the treating physician rule, it was harmless error" where the opinion in question was an

unsupported check-box opinion. *Id.*; *accord Shepard v. Comm'r of Soc. Sec.*, No. 17-1237, 2017

WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (finding that a doctor's "conclusory opinion, which

provided no supporting findings or records and consisted largely of one word answers, circles,

and check-marks" was suspect under *Hernandez*); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705,

2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to

provide good reasons" for assigning little weight to a treating source's opinion, such error was

harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond

a diagnosis); *Denham v. Comm'r of Soc. Sec.*, No. 2:15cv2425, 2016 WL 4500713, at *3 (S.D.

Ohio Aug. 29, 2016) ("The magistrate judge also correctly found that any error in the ALJ's

consideration of Lewis's evaluation was harmless because the check-box form was so patently

deficient that the Commissioner could not possibly credit it," and observing that "[t]he Sixth

Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any

explanation for his findings."); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404,

2017 WL 4699721 at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical source statement that was

is in the "check-box format" was "an impotent addition to the record with little to no persuasive

value," and that it was "immaterial" if there was certain evidence in the record consistent with

the opinion "because the ALJ provided 'good reasons' for discounting his opinion and this Court

may not reweigh the evidence"); *cf. Herzog v. Comm'r of Soc. Sec.*, No. 2:16-CV-244, 2017 WL

4296310, at *3 (S.D. Ohio Sept. 28, 2017) (disagreeing with a report and recommendation which

determined it was error for an ALJ to reject an opinion because it was given on a check-the-box,

preprinted form—noting that while "there is no *per se* rule regarding this type of evidence, the

Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to

give any explanation for his or her findings.")

Dr. Ksenich's February 2016 opinion mirrors the unexplained and unsupported checklist/checkbox opinions disfavored in the above cited cases. As set forth in the recitation of the medical evidence, *supra*, the pertinent form contains checked boxes coupled with a brief, vague notation that simply states: "Due to musculosketal condition, unable to lift more due to pain + weakness." (Tr. 1428). The opinion does not contain a diagnosis, let alone any meaningful explanation as to how the symptoms of Plaintiff's medically determinable impairments would cause the listed restrictions. In fact, Dr. Ksenich's notation applies only to Plaintiff's ability to lift, yet he simply marked "as above" when asked to explain the other restrictions he assessed. (Tr. 1428-1429). Further, the opinion fails to cite any evidence (such as objective findings, observations, medical records) to support the assessed limitations. *Id.* Based on the *Hernandez* decision, the court similarly finds that this opinion is "patently deficient" and the ALJ did not err by failing to credit it.

In addition, the ALJ gave sufficient other reasons for discounting the opinion. These included the ALJ's observation that Dr. Ksenich's opinion appears to be based upon the claimant's subjective complaints. (Tr. 111). A number of courts have found that a physician's opinion, where it is "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints

16

without sufficient support from objective clinical or neurological findings); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment); *accord Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....") Because the ALJ determined that Plaintiff was not credible (Tr. 105), a determination that is entitled to considerable deference and a finding which Plaintiff has not challenged, it was not unreasonable for the ALJ to discount a medical source opinion that was primarily based on Plaintiff's self-reports of pain.

The court finds that Plaintiff's first assignment of error is without merit, as the check-box opinion was patently deficient, and the ALJ gave sufficient reasons for not adopting the unsupported check-box opinion contained in the February 2016 assessment.

## 2. RFC Determination

In the second assignment of error, Plaintiff argues that the RFC determination is not supported by substantial evidence because: (1) the ALJ "cherry picked" the evidence; and, (2) the ALJ ostensibly ascribed great weight to a medical opinion without accounting for all limitations set forth therein. (R. 11, PageID# 1504-1506). The Commissioner asserts that the ALJ's RFC determination was supported by substantial evidence, and further avers that Plaintiff's argument—that the ALJ allegedly cherry-picked the evidence—is an impermissible invitation to re-weigh the evidence of record. (R. 13, PageID# 1521-1526).

The RFC is an indication of an individual's work related abilities *despite* their limitations.

*See* 20 C.F.R. §§ 404.1545(a).[8]  Therefore, it is the ALJ who bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the vocational expert, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217

---

[8]  Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

Cir. 1993)). "In formulating a hypothetical question, an ALJ is only required to incorporate those

limitations which he deems credible." *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL

400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372

Fed. App'x 582 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19

(6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

Plaintiff cites *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. Feb. 4, 2014) for

the proposition that an ALJ may not cherry pick the evidence of record. (R. 11, PageID# 1505).

In *Gentry*, the Court of Appeals found that the ALJ "fail[ed] to address certain portions of the

record, including the evidence of a continuing illness that was not resolved despite use of

increasingly serious and dangerous medications." *Id.*

Here, by contrast, the ALJ did not ignore the evidence cited by Plaintiff in his brief in

connection with his cherry-picking argument—the wrist surgery, foot surgery, injections, and a

November 2015 treatment note. (R. 11, PageID# 1505, *citing* Tr. 498-510, 779, 909, 987, 1182,

1407, 1441-1442). The ALJ expressly cited and discussed these portions of the record, with the

exception of the November 2015 note as explained below. The ALJ addressed the pain injections

and radio frequency ablation Plaintiff received from Charles Choi, M.D., in several separate

paragraphs of the decision (Tr. 105-106), Plaintiff's bunion surgery on his right foot (Tr. 107),

and Plaintiff's right wrist carpal tunnel release surgery. (Tr. 108). The court agrees the ALJ did

not discuss any of the evidence contained in Exhibit No. B33F, which contains the November

2015 assessment alluded to in Plaintiff's brief. (Tr. 1430-1444). However, while the treatment

notes predate the ALJ's decision, it is clear from the record that said notes were *not* submitted by

Plaintiff or his counsel until, at the earliest, April 4, 2016—nearly a month *after* the ALJ

rendered the underlying decision. (Tr. 1430-1431). Needless to say, an ALJ does not impermissibly cherry-pick evidence by failing to address evidence that was not in the record at the time of the decision.

Furthermore, in a decision after *Gentry*, the Sixth Circuit found that the claimant's allegation of cherry-picking by the ALJ was unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438 at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418 at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437 at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). In this case, the ALJ did not ignore the evidence, which Plaintiff has identified to justify a more restrictive RFC. While a scenario may exist where the ALJ acknowledges certain records in the decision but unreasonably fails to credit them, here Plaintiff has merely pointed to a number of medical records without explaining how the cited evidence conclusively established that a more restrictive RFC was required. This court cannot re-weigh the evidence, and Plaintiff has failed to demonstrate any error.

Moreover, Plaintiff asserts that the ALJ erred by not accounting for alleged restrictions contained in Dr. Smith's consultative opinion despite purporting to ascribe great weight to said opinion. (R. 11, PageID# 1504-1506). Set forth in greater detail above, Dr. Smith, in relevant part, opined that Plaintiff "may have some difficulty dealing appropriately with supervisors and

co-workers. In the past he reported a tendency to become easily upset, to respond excessively to interpersonal stresses, to have difficulty with hiring and firing, and with a tendency to argue with employees or customers." (Tr. 841-842).

Plaintiff is incorrect that the ALJ's RFC did not contain "any restriction" related to Plaintiff's ability (or inability) to interact with other, including supervisors and co-workers. (R. 11, PageID# 1506). The RFC specifically states that Plaintiff could "interact with supervisors and coworkers frequently, but occasionally with the public." (Tr. 103). Pursuant to *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C*, an activity that is performed "frequently" exists from as little as 1/3 of the time up to (but not exceeding) 2/3 of the workday. By contrast, an activity performed "constantly" exists 2/3 of the workday or more. *Id.* Thus, Plaintiff's contention that the RFC omitted *any* restriction with respect to Plaintiff's ability to interact with co-workers and supervisors, is inaccurate. (R. 11, PageID# 1506). Consistent with Dr. Smith's opinion, the ALJ limited Plaintiff to interaction with co-workers and supervisors occurring between 1/3 and 2/3 of the workday. (Tr. 103). To the extent Plaintiff contends that Dr. Smith's opinion warranted even greater restriction, the court disagrees. Dr. Smith only stated that Plaintiff "may have some difficulty dealing appropriately with supervisors and co-workers." (Tr. 841). Dr. Smith's opinion gives no indication as to the frequency with which Plaintiff could interact with co-workers or supervisors. Nothing in his opinion can reasonably be construed as either prohibiting Plaintiff from any interaction with co-workers or supervisors or limiting him to only occasional interaction (no more than 1/3 of the workday).[9]

---

[9] Plaintiff's assertion that Dr. Smith's opinion is consistent with the opinion of Dr. Tischler is merely Plaintiff's reading of the evidence. Moreover, Dr. Tischler's statement—that Plaintiff

Therefore, Plaintiff's second assignment of error is without merit.

**3. Sentence Six Remand Based on New Evidence**[10]

In his final assignment of error, Plaintiff argues that new, material evidence exists justifying a remand for further consideration of his claim. (R. 11, PageID# 1506-1509). Specifically, Plaintiff asserts that this evidence includes an additional carpal tunnel surgery on his left wrist as well as lumbar surgery—the former post-dating the hearing and the latter post-dating the decision. *Id.*

Under 42 U.S.C. § 405(g) sentence six, a court "may ... remand [a] case to the Commissioner ... for further action by the Commissioner ... and it may at any time order additional evidence to be taken before the Commissioner ..., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate. *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Evidence is considered new only if it was "not in

_____

"[w]ould do best working alone with occasional/intermittent interaction with coworkers and supervisors"—reads more like a recommendation than a restriction, and the ALJ only gave partial weight to his opinion. (Tr. 109, 296).

[10] The court does not construe Plaintiff as arguing that the RFC was unsupported based on evidence found in the new records, as the Sixth Circuit has repeatedly held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 615 Fed. App'x. 254, 261 (6th Cir. 2015) ("After the ALJ rendered her decision, Appellant submitted additional evidence from Dr. Tucker to the Appeals Council, including additional treatment notes and an opinion regarding Appellant's limitations. A court cannot consider such a belated submission when reviewing an ALJ's decision."); *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand").

existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted). Further, "[i]n order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711; *see also Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 2012 WL 1592750 at * 11 (6th Cir. 2012); *see also Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 2012 WL 1592750 at * 11 (6th Cir. 2012). Finally, "'[g]ood cause' can be shown only by demonstrating a reasonable justification for failing to present the evidence at the administrative hearing." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x 625, 631 (6th Cir. 2016).

Here, the Commissioner concedes that the evidence submitted by Plaintiff is both new and that good cause exists for not providing the evidence prior to the hearing. (R. 13, PageID# 1532). However, the Commissioner contends that the new evidence is not material because it is evidence of deterioration after the hearing rather than evidence of the conditions and impairments that existed before the hearing. (R. 13, PageID# 1532-1533). In addition, the Commissioner asserts the new evidence is merely cumulative and, therefore, there is not a reasonable probability that the evidence would yield a different result (*i.e.* a finding of disability). *Id.* Cumulative evidence is "not 'material' within the meaning of 42 U.S.C. § 405(g) and contained nothing that would cause the ALJ to change his opinion." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990); *accord Hamilton v. Astrue*, No. 1:09CV260, 2010 WL 1032646, at *5 (N.D. Ohio Mar. 17, 2010) (White, M.J.).

In his brief, Plaintiff argues that the new evidence is material because: (1) the April 28, 2016, doctor's examination reported Plaintiff had a limp on the left, could not heel or toe walk,

had positive straight leg raise testing, and had left L4 nerve root swelling; and, (2) the myelogram performed on April 13, 2016, provided additional evidence of the impingement of the S1 nerve root, which supports the opinion of Dr. Hazen from November 2015, that Plaintiff had significant S1 nerve root compression. (R. 11, PageID# 1508, *citing* Tr. 141-43, 147, 1440-42). The court agrees with the Commissioner that the new evidence is merely duplicative or cumulative. On November 12, 2015, Dr. Hazen observed that "the patient does have on his MRI of 10/09/2015 a significant disk protrusion on the left at L5, S1 with significant S1 nerve root compression." (Tr. 1442). The decision makes specific reference to Plaintiff's lumbar MRI from October 9, 2015. (Tr. 108). Thus, Plaintiff has identified nothing material from the April 2016 myelogram that is not cumulative of evidence in the record.

With respect to Dr. Hazen's April 2016 treatment note, she characterizes Plaintiff's left-sided limp as "slight," states that Plaintiff "is unable to go on his toes or heels because of pain," and had positive straight leg raise at sixty degrees. (Tr. 140). Plaintiff fails to set forth a compelling argument that these observations are materially different than the evidence already existing in the record, but merely is asserting that the treatment note correlates to Plaintiff's reports throughout the record of radicular symptoms. (R. 11, PageID# 1508). The record that was before the ALJ indicates Plaintiff had at least one other positive straight leg raise test. (Tr. 496). Moreover, Plaintiff has also not explained how Dr. Hazen's observations would lead to a reasonable probability of a different result, which, on its face, is not obvious given the sedentary RFC and additional postural restrictions set forth in the ALJ's decision.

Therefore, the court finds Plaintiff has failed to meet his burden of establishing that the new evidence is material and, therefore, a sentence six remand is not warranted.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: November 21, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).